

**RECEIVED**
10/14/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
AXM

UNITED STATES DISTRICT COURT FOR THE NORTHEN DISTRICT OF ILLINOIS

| | |
|---|---|
| Darlene Reed<br>Plaintiff, | ) <br> ) <br> ) <br> ) |
| VS. | 25-cv-12645<br>Judge Matthew F. Kennelly<br>Magistrate Judge Daniel P. McLaughlin<br>Random / Cat. 2 |
| Illinois Criminal Justice Information Authority ETAL<br>Defendant | Case No.<br><br>Jury Demanded |

## Complaint

### Nature of Case

- Plaintiff brings this action against Defendant for injunctive relief and to recover damages proximately caused by Defendant's illegal discrimination, retaliation and creating a hostile working environment due to Darlene Reed reporting fraud. Darlene Reed reported fraud and bullying to Illinois Criminal Justice Information Authority, Tara Radford, Karen Crawford, Human Resource, and the Ethics Department retaliated against her and terminated her. The Illinois Human Rights Act (IHRA) prohibits retaliation against an employee for asserting their rights under the Act, which includes reporting discrimination or harassment based on protected characteristics like race, sex, or disability. While the Illinois Whistleblower Act (IWA) specifically protects employees who report legal violations to the employer or a government agency, the IHRA provides broader protections against retaliation for opposing or reporting unlawful conduct. **IHRA Protects Against Retaliation for Protected Activity**:

  The IHRA protects employees from adverse actions (like termination, demotion, or harassment) if they report or oppose violations of the Act, such as discrimination based on race, color, religion, sex, national origin, age, disability, or other protected characteristics.

- **IWA and Whistleblower Protection**:

  The IWA protects employees who report potential violations of state or federal law to law enforcement or government agencies, or who refuse to participate in illegal activities. The IHRA also provides whistleblower protection for state employees reporting wrongdoing under the State Officials and Employees Ethics Act, according to Illinois.gov.

Examples of Federal Anti-Retaliation Laws

- **Title VII of the Civil Rights Act of 1964**:

  Protects employees from retaliation for complaining about discrimination based on race, color, religion, sex, or national origin.

## Jurisdiction and Venue

This Court has original jurisdiction over Plaintiff's ADA claims under 28 U.S.C. §§ 1331, 1337, and 1343. Case: 1:21-cv-01302 Document #: 1 Filed: 03/10/21 Page 1 of 22 Page ID #:1 2 3. This Court has supplemental jurisdiction over Plaintiff's state law retaliation claims pursuant to 28 U.S.C. 1367(a). Venue is proper in this Court in that Defendant's illegal acts complained of herein took place within the geographical boundaries of this Court's jurisdiction.

## The Parties

Plaintiff, Darlene Reed (hereafter "Darlene") is an individual that was employed within the jurisdictional boundaries of this Court. Darlene was employed by Defendant State of Illinois Criminal Justice Information Authority. Her last position with Defendant Illinois Criminal Justice Information Authority, Chicago Illinois.

Defendant, Illinois Criminal Justice Information Authority (hereafter "ICJIA"), is a public corporation and body politic that at all times relevant to the allegations herein conducted significant business in Illinois through numerous departments.

At all relevant times, ICJIA employed in excess of 500 employees within the jurisdiction of this Court and throughout the state and was thus an employer and covered entity as defined under the "The Illinois Human Rights Act (IHRA)".

## Relevant Facts Common to all Counts
## State of Illinois Code of Personnel Conduct Handbook

Employees violated: **Public service is a public trust, not to be abused for private gain.**

State Employees must put forth honest effort in the performance of their duties.
State Employees may not give improper preferential treatment to any private organization or individual.

**Employees violated: Public Service must be an equal opportunity for all**

State Employees must adhere to all laws and regulations that provide equal opportunity for all. There must be no unlawful discrimination, harassment, intimidation or retaliation in any employment practice based on race, color, national origin, religion, age, sex, marital status, disability, ancestry, sexual orientation, military service, political affiliation, or any other protected status or non-merit-based factor.

**Insubordination:** A State Employee (a) must execute the lawful instructions, whether oral or written, of a supervisor or member of management having authority over the State Employee, (b) may not be disrespectful in his or her conduct and communication, whether oral or written, directed toward a supervisor or member of management, and (c) will comply with State and State Agency policy as directed.

**Disruptive Conduct:** A State Employee may not (a) engage in disruptive conduct or activities or horseplay that interrupts work or impedes the work of others, or (b) use abusive or offensive language, gestures, or similar conduct.

**Unsatisfactory Work Performance:** While on duty, a State Employee should dedicate his or her efforts to the performance of assigned work and other job responsibilities. A State Employee (a) will perform all work duties assigned to him or her, (b) will not perform any work duties in a negligent manner that results in a material delay or material financial loss to the State, and (c) will not engage in willful idleness while on the job.

**Breach of Confidentiality:** A State Employee will take reasonable measures to protect confidential information in his or her possession. A State Employee may not knowingly (a) fail to safeguard confidential information, (b) take actions which result in a breach of confidential information, or (c) violate confidentiality requirements inherent to the State Employee's position or his or her State Agency's mission.

Conduct Unbecoming of a Supervisor: A State Employee in a position with supervisory authority may not (a) intentionally, negligently, or recklessly commit any illegal act or violation of State or State Agency disciplinary rules or code of conduct, (b) order State Employees to perform a task for other than an
official purpose, or (c) exploit supervisory authority for personal gain or personal profit.

**The Ethics Act prohibits retaliatory action against employees when they:**

- disclose or threaten to disclose to a supervisor or a public body an activity, policy, or practice of any state agency, office or employee that the state employee reasonably believes to be a violation of law, rule or regulation; or
- provide information to or testify before any public body conducting an investigation, hearing, or inquiry into a violation of law, rule, or regulation by any state agency, officer, or employee; or
- assist or participate in a proceeding to enforce the State Officials and Employees Ethics Act.

**Retaliatory action means:**

3

- Reprimand, discharge, suspension, demotion, denial of promotion or transfer, or change the terms or conditions of employment of any state employee that occurs in retaliation for an employee's involvement in the protected activities, above.

**Remedies if retaliation occurs may include:**

- reinstatement of employment;
- two times back pay;
- interest on back pay;
- reinstatement of fringe benefits and seniority rights; and
- payment of reasonable costs and attorneys' fees.

Darlene Reed
312-882-0772
Darlene1312@yahoo.com

My job has been threatened and was terminated because I spoke out and complained about fraudulent activity with ICJIA employees, I spoke out about bullying and the hostile work environment. In addition, I spoke out about my personal emergency contact information being shared amongst employees (my supervisor).

I began working for (ICJIA) Illinois Criminal Justice Information Authority in June of 2025. I am a contractual worker, Grant Examiner.

In the beginning, Tara Radford (Supervisor over the Grant Examiners), she was training me on day-to-day activities. Included in the activities are weekly meetings (Monday and Wednesday) to discuss daily work or concerns. Throughout the meetings Tara Rafford would ask me questions regarding approval of support documentations grantees would submit. As a degreed Accountant, I would answer based of my past experiences which seem to aggravate Tara Radford and Karen Crawford. Throughout the meetings, I would ask questions or just participate. On 6/23, Karen Crawford attended the meeting, I did not pay any attention to her, I continued with my normal routine, I did not know Karen Crawford was my supervisor. After, the meeting Tara Raford sent me a message through Teams asking me if I recognized Karen Crawford and she informed me that Karen Crawford was my supervisor.

On 7/21/2025, I attended the weekly meeting, and Karen Crawford was in the meeting. During the meeting, Karen Crawford was attacking me with questions and statements. Towards the end of the meeting, she stated " I will embarrass you Darlene, so please don't embarrass yourself. On 7/22/2025 I received a Team message from Barbara King at 6:00 AM in the morning asking  me if I was okay and telling me I handled myself well during the hostile meeting where I was attack verbally on 07/22/2025 she also stated that she was concerned about me. After, being attacked

4

during the meeting with Karen Crawford, the attacks became more frequent. (Picture of the message).

08/01/2025

<u>This grant 823170 was assigned to me on 6.27.2025.</u>

I had a meeting with Tara expressing my concerns about Agency Area 823170 grantee and the lack of their support documentation. Tara disagreed with my decision to disallow personnel and fringe benefits. I disallowed the benefits because they did not submit the proper support documents. I met with Tiffany Sledge the QA reviewer and expressed my concerns. Tiffany agreed with my concerns and agreed with me disallowing the cost for personnel because of lack of support. (Screenshot emails, show the original letters and the database).

Later, Tara called me, I told Tara the screaming and yelling makes my workday harder because I am nervous and shaking after attending meetings that involves Tara Radford and Karen Crawford screaming and yelling in meetings. It impossible to work in a hostile work environment. I asked Tara if she recognizes her unprofessional behavior, and she admitted that she recognizes her unprofessional behavior.  However, throughout the meeting Tara kept trying to manipulate my words, so I hung up the phone. On Monday, Tara called me again trying to restart the conversation from Friday – 08/01/0225. (I sent a Teams message clarify my statement that Tara tried to manipulate about a co-worker named Jim).

08/05/2025

I attended a meeting with Tiffany again the topic was **823170 Agency Area**. Tiffany stated that she wanted to speak with Tara about the disallowed personnel and fringe benefits cost. On 8.5.2025, Tara and Tiffany had a meeting about the disallowed cost for personnel regarding Agency Area 823170 . I was not invited to the meeting, so therefore I continued working. I was not aware of what was discussed during the meeting, but yet I am reviewing Agency Area I am responsible for the review.

On 8.6.2025

Again, Tara and Tiffany were on a called (meeting) together discussing the 823170 Agency Area grant without me. I have no knowledge of the conversation, but yet this grant was discussed on 8.6.2024 in the morning and at 1PM. Meanwhile at 10:33 AM I tried to access the grantee exam template( Agency Area 823170) but I could not fully access the files because Tiffany and Tara were in the file. I sent Tiffany a Teams message asking her to let me know when she was done with the file. **08/06/2025 and 10:33 AM is very important to remember, I did not have full access to the file because Tara and Tiffany were in the file on the date and time. (Fraud)**

5

I was informed by Tara not to communicate with the grantee, and all my letters to the grantee were rewritten by Tiffany Sledge. After I expressed my concern as an accountant the bullying got worse.

I had a meeting with Tiffany again about 823170 Agency Area , Tiffany told me to stop calling and emailing Tara because she was busy and had other important things to attend to. I was taken aback because, I had not called Tara since 8/1/2025. Tara calls me. But I understood the request and did not contact Tara.

I had a meeting with Tara and Karen on 8/15/2025 , and Karen once again created a hostile work environment. She began to ask me questions, and I would answer, but she would create an argument around my answer.

ON 08/18/2025 TARA MYSLEF AND KAREN WAS ON A MEETING, I noticed the grantee 823118 Madison Community personnel and fringe benefits were inflated, meaning they were double dipping. I told Karen about the double dipping, during a meeting on 08/18/2025. During the meeting KAREN BEGAN TO YELL AT ME AND TELL ME TO DO WHATEVER SHE TOLD ME TO DO. BECAUSE I DISAGREED AND HAD ADDITIONAL QUESTIONS ABOUT AN EXAM, I WAS REVIEWING. I did what Karen told me to do, but I told Jessica Scheele 9Grant specialist) about the inflated personnel and fringe benefits, Jessica made the corrections.

 TARA DO NOT RECORD THE MEETINGS WHEN THEY ARE SCREAMING AND YELLING AT ME!! Tara is selective about the meetings she records.

On 08/20/2025 I attended a meeting with Tiffany and Jim. Tiffany facilitated the meeting, and she recorded the meeting without anyone's permission. During the meeting, I was being pressured about going alone with my team rather I agree or disagree when approving support documentation and examinations. Tiffany asked during the meeting if I was aware of a PDF payroll support document in Area Agency – 823170 folder that was **uploaded on 08/06/2025 at 10 AM**. I told her I was not aware of the PDF file. I checked the file after the meeting and noticed that Tara created a PDF payroll summary file for the grantee on 08/06/2025 which is fraud! Tiffany knew about the file and never shared the information with me. Tiffany stated that I needed to be on board with everyone about 823170, and I should allow the personnel and fringe benefits **cost based off the document Tara created on behalf of the grantee**. Meaning I would give the grantee false hope and lie as if the grantee would be awarded personnel and fringe benefits in the amount of $12,500. . I sent Tiffany emails showing that the file was place in the folder fraudulently, Tiffany ignored my emails. After the meeting with Tiffany and Jim, and after Karen's yelling session I decided to go along and allow the personnel and fringe benefits for the grantee. (I have the video, Tiffany recorded the meeting). The support document that I was told to use is fraudulent Tara created the document. Tara made the document. Tara import the excel spread sheet to PDF to justify the grantees request to receive $12,500. However, the grantee submitted other personnel documents and fringe benefits documents that counter the fraudulent

6

document Tara created. Meaning that I reviewed the second set of documents sent by the grantee which gave me grounds again to disallow a portion of the personnel and fringe benefits cost correctly. Now the grantee is confused, because in the beginning, Tara created a phony-fraudulent document which the allowed $12,500. Now, $12,500 is no longer allowed for personnel and fringe benefits and the grantee expressed concerned.

**If Tara is comfortable making fraudulent files for one grantee, this means that she is making fraudulent files for others!**

08/20/2025

After the meeting on 8/20/2025, Tiffany called me via Teams and accused me of recording a the meeting. At that point I was a bit over the hostility and bullying. And after speaking with Tiffany, I called Karen Crawford to tell her about my concerns and to find a resolution. During my conversation with Karen, I explained there was no necessity for me to record any meetings, as Tara and Tiffany were already doing so (They selectively record meetings). The only recordings I had were of my noon prayers, church services during lunch. I spoke to Karen about the fraudulent document and more. Karen recorded the private conversation I had with her and uploaded parts of conversation to OneDrive the same day. The next day I sent Karen Crawford and email showing her my notes and the videos that her and Tiffany recorded to show her, there is no need for me to record because they selectively record. However, after noticing Karen upload a **private** conversation between her and myself, I started recording for my protection. Karen uploaded a private conversation about my concerns, **but yet she is the supervisor.** Karen created a conflict knowingly.

On 8/25/2025

As I continued to feel uncomfortable with the fraudulent document in the folder, I emailed Tara at 10:03 AM asking her to remove me from the assignment kindly. Within five minutes, I received a call through Teams. On the call was Tara, Tiffany and Karen. During the call, I was being told to go along with everything, and Karen disallowed my request to be removed from the exam.

Me speaking at a meeting, I noticed Tiffany motioning to Tara or Karen to shut up!! Meaning, not to scream or yell at me. I have the video, Tiffany made the recording.

On 9/03/2025-09/05/2025

We had a meeting regarding 823170. The meeting was with Tara, myself, Marvin and Carolyn and Cydney about the grantee 823170. During the meeting Tara was very rude. Tara kept cutting my conversation off midway. To the point Carloyn (the grantee) and Cydney (Grant Specialist) asked me to repeat myself towards the end of the meeting. I responded and told the grantee that I would resubmit **Attachment A** (I document created by ICJIA) to her by email. Attachment A is a guide that was created for the grantees to use regarding supportive documentation. The following

7

workday, (09/05/2025) Karen Crawford began to yell and scream at me for telling the grantee that I would resubmit **Attachment A** to her by email. She said that I was confusing the grantee by re-sending **Attachment A**. Tara went back and told Karen that I suggested to send **Attachment A** to the grantee. I sent Attachment A to help the grantee regardless. Attachment A is apart of ICJIA property for grantees.

On 9/15/2025

During a meeting with Tara and Tiffany, Tara began speaking to me in a disrespect tone. I stop the meeting because I was fed up and asked if we could respect each other. Tiffany got mad, because I asked for the disrespect to stop but Tara apologized.

On 9/22/2025

I had a meeting with Tiffany to review Area Agency 823170. And she was trying to bait me into an argument. She began to yell and scream while I was trying to point out that there was a **percentage of time associated with personnel and fringe benefits with the grantee's budget**. After the meeting Tiffany redid my entire final letter over. I disagreed with the decisions. I was instructed by Tara to include her, Carolyn (grantee), Cydney, Tiffany and Marvin in the email I sent to the grantee. I was instructed not to respond or help the grantee or help the at all.

On 9/25/2024

I received an email with Karen Crawford instructing everyone to send her a copy of their emergency contacts. She stated that human resources were requesting the documents. I contacted HR (Shana), and I was told to send my documents to Beatris Gonzalez. I sent my information to Beatris on 09/29/2025. A few days later, I received an email from Human Resources demanding that I submit my personal information to Karen Crawford. Keep in mind, other people (Tara Radford) have direct access to Karen Crawford's email. Karen is not apart of Human Resources. In addition, Karen Crawford and Tara Radford are the head bullies. Shortly, I received a reply for Karen Crawford's email stating that "Hemant" needed my emergency contact information. So they lied, originally the email said the Human Resources was requesting my emergency contact information.

I sent a complaint to human resources regarding Tara Radford and Karen Crawford. Human Resources told me that they would do an investigation, but they did not investigate. They sent my concerns to Scott, and Scott sent me and email and he began to retaliate against me.

On 9/29/2025

I received an email from Karen Crawford asking me to submit my "Emergency Contact to her via email. I reached out to Human Resource via email and told them about my concerns. I submitted my emergency contact information to Beatris Gonzalez on 09/29/2025. In addition, I summited my emergency contact information in June of 2025. Later I was told that Hemant

8

Modi was requesting my personal information. Hemant Modi job title is Senior Public Service Administrator. (I have emails)

10/07/2025 (Scott Risolute conversation)n He was appointed by the Governor.

Good afternoon (Emailed Human Resources)

Since taking on the role of a contractual employee with the Illinois Criminal Justice Information Authority (ICJIA), I have unfortunately encountered numerous unprofessional behaviors that have made my working experience rather challenging, and the work environment hostile. Much of this misconduct stems from the actions of individuals such as Tara Radford and Karen Crawford, which has become increasingly difficult to overlook.

In an attempt to resolve some of these issues, I decided to approach Karen Crawford directly through a private conversation via Teams. I intended to convey my concerns and complaints discreetly; however, Karen chose to record our meeting without my consent and later uploaded the recording to OneDrive, making it accessible for others to view. This breach of privacy only compounded my grievances, one of which involved a serious accusation made by Tiffany Sledge, claiming I had been secretly recording a Teams meeting. Additionally, there have been incidents involving fraudulent files uploaded to the Grantee folder, among other troubling matters.

Yesterday, I received a call from Scott Risolute (President of Ethics), who wanted to discuss the fraudulent document that Tara Radford had placed in the grantees' file (10/07/2025). The call came in promptly at 11:52 AM and continued for a lengthy 34 minutes. In the beginning of the conversation, I expressed to Scott that I enjoy working for ICJIA and I did not want to lose my job because I am reporting illegal actions. During our conversation, I recounted to Scott how and when this document first came to my attention. As I explained the situation to him, Scott began to challenge my assertions. He questioned the validity of my claims, asking if it were possible that I might have been mistaken or if I could have mixed things up at some point.

In response to Scott's inquiries, I explained to him that certain software programs automatically attach the creator's name to documents, and this associated name with the document remains unchanged regardless of whether the document is downloaded or edited. Scott proceeded to probe further, wanting to know to whom I reported my complaint. At that point, I expressed my discomfort in disclosing that information, pointing out that Scott seemed to have a biased approach to the situation.

Scott inquired if I had approached Tara about the document. I explained that I had indeed expressed my concerns regarding the document to Tara, as well as to Tiffany and Karen. I also mentioned to Scott that when I privately spoke to Karen Crawford about the matter, she recorded our conversation and shared part of the video on OneDrive for others to see and hear. Scott probed deeper, asking if I had questioned Karen about her decision to post the video.

9

Persistently, Scott continued to demand information about my sources and the individuals I had made my complaint to, asserting that there was only one institution—the Attorney General (inspector)—where I could file my complaint. He inquired whether I believed him incapable of performing his job, to which I assured him was not the case. Yet, he insisted on knowing why I would not disclose my sources to him.

Scott also asked if I had spoken to the grantee, to which I replied that I had not. He wanted to know if I sent the fraudulent document to the grantee, and again, I said no. In turn, I questioned Scott if he had ever received complaints about either Tara Radford or Karen Crawford, and he responded in the no. I informed him that others had encountered similar issues with Tara. When Scott asked if the term "fraud" was commonly used by others, I clarified that people generally described the situation as biased rather than fraudulent.

In our discussion, I addressed the bullying issue, but Scott seemed unfazed, stating that it was a matter for human resources. Feeling increasingly uneasy, I expressed my discomfort with the ongoing conversation and ended the call. I am emailing this recount for my memory purposes.

10/2/2025

I filed a complaint with Human Resources. I emailed Gonzalez, Beatris Beatris.Gonzalez@Illinois.gov and Butler, Shana <Shana.Butler2@Illinois.gov at 11:41 AM. I submitted a complaint regarding bullying and hostile work environment and privacy being shared.

I was retaliated against for telling others about the fraud, bullying and the hostile work environment. The bullies tried to bait me into meetings, but I refused.  There is no separation of duties with ICJIA. Majority of the employees are violating laws and they help each other violate laws. Retaliate

10/08/2025

I was terminated three times on 10/08/2025, and once 10/9/2025.

Karen Crawford terminated me in Teams, then she rehired me.

I received an official termination letter from Tara Radford on 10/08/2025.

I received a termination email for Beatris Gonzalez on 10/09/2025.

Allegedly, Tara Radford has a nonprofit organization called Girlfriends Unfiltered and a company called Tara Radford Consulting and Accounting with is a direct conflict of interest. Allegedly, Tara Radford and Karen Crawford increased James Jarosz pay illegally.

As a direct and proximate result of Illinois' illegal retaliation as described above, she has lost income in the form of wages, and other benefits, and has suffered emotional and physical pain,

mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and she is expected to incur future damages.

## Prayer for Relief (as to all Counts)

WHEREFORE, Plaintiff, Darlene Reed respectfully requests that this Court enter judgment in his favor and against Defendant, STATE OF ILLINOIS (ICJIA), as follows: A. Order Illinois to make Darlene Reed whole by paying her appropriate back pay, two times back pay (Count IV only) and reimbursement for lost and out-of-pocket expenses, plus pre-judgment interest in an amount to be shown at trial; B. Order Illinois to immediately recall Darlene Reed to work in her former position or in another suitable position. Order Illinois to pay Darlene Reed an appropriate amount of front pay.

Order Illinois to pay Darlene compensatory damages in the maximum amount allowable under the law; D. Order Illinois to pay Darlene's costs incurred in bringing this action, including, but not limited to, expert witness fees and reasonable attorneys' fees; E. Try all issues of fact to a jury; and, F. Grant such other relief as the Court deems just.

**I am asking to be awarded $150,000.00**